Good morning. May it please the Court. Shahan Saghafi on behalf of Appellant, California Civil Rights Department. I'll reserve eight minutes for rebuttal. So there are two core questions here. First is the pure procedural question of Rule 24. In the rare circumstance where a federal agency seeks to settle state claims being litigated in state court by a state agency, does Rule 24 require the district court to allow the state agency to participate as a party to protect its litigation positions? Now, that's a pure procedural question that does not require the court to resolve the substantive critique from CRD that the EEOC exceeded its congressionally delegated authority to include the state law claims. The second question, of course, is the mootness question. Is there some live justiciable issue due to A, the substantive challenge to the settlement, and B, the ongoing injunctive relief continuing for another two years? The answer to both of those questions is yes. And the text and policy of Rule 24 guide us as to both. So this Court repeatedly instructs Rule 24 to be applied liberally, broadly, in favor of intervention. Why is that? To promote efficiency, to simplify future litigation, and to achieve broadened access to the courts for parties. So this has implications both for what has already happened, the district court's Rule 24 error, and for what is yet to come. The implementation of the junk. I'm sorry. Just one point of clarification. Did you say 24B? Are you arguing principally here under permissive as opposed to of right? Yes, Your Honor. Oh, sorry. Both. I just said 24. So as of right and permissive. Okay. But you said it's purely a doctrinal question. One of the concerns the district court had is that your argument would mean, you know, any time you really have to allow the intervention. Any time there's state agency and federal agency. You surely can't mean that. It's purely doctrinal. Sorry. It's purely procedural. I misspoke when I said doctrinal. I think the Court misunderstood the situation to hypothesize that any time there was federal litigation, the state might come in. This is a very rare and, as far as I know, totally unprecedented, unique situation where there's a federal case where the AEOC has sought to settle state law claims that are currently being litigated by the COD. I appreciate the fact pattern and the unique circumstance, but I misunderstood perhaps. I took you to be arguing there at the outset that you really were asking us to view this as sort of divorced from that unique fact pattern. It seems to me the facts and the overlapping nature of the claims is really critical. Oh, definitely, Your Honor. Yes. I just took you too literally. Go right ahead. I apologize. It was my misspeaking. So what I simply mean is when you look at the text of Rule 24, as well as the policy undergirding it, and apply that text and this Court's extensive jurisprudence broadly interpreting Rule 24 to this particular fact pattern as a procedural matter, the Court very much got it wrong. And I think it's helpful to bear in mind that policy because it instructs us both with respect to the error that has been made, but also what is yet to come in terms of implementation of the injunctive relief. Because Rule 24 points us to the awareness that in the adversarial system, we need all the parties at the table to zealously litigate and empower the judge to make the right decision. But litigation also, and this is important to the injunctive relief not being moot, litigation is also more than just warfare and battle and billiard balls bonking into each other. It's also conversation. It's also a dialogue. And so in the Court's jurisprudence with respect to United States versus Los Angeles, where the police union intervened, or Oregon, where the institutionalized patients intervened, or Stringfellow, where the environmental groups intervened, these parties, whether they're police officers or environmental groups or businesses or individuals or voters, they come to the table during the implementation of the injunctive relief to work together. Let's suppose that the District Court had granted your motion to intervene either on A or B reasons. I think it's irrelevant as to whether it proceeds under A or B. What would you have done differently at the District Court level? Meaning what would have happened next? Yeah. We would have asked the courts to rule on the legality of the state law component of the release as exceeding EEOC's jurisdiction, exceeding what Congress had authorized the EEOC to pursue. We would have also asked for. . . And did you brief that to the District Court? Yes, Your Honor. As an amicus? Yes, Your Honor. Okay. So that's not something different. It's the same thing. You would have filed the same. . . Would you have filed a different brief? The arguments. . . It would have changed the color of the brief. Yes, Your Honor. Other than the color of the brief, what would you have argued differently? I don't think we would have made substantively different arguments. I think the court. . . So what procedurally would have been different? If we had lost, we would have appealed. Okay. And you're here on appeal. So we're at least getting that, although you've got an anterior question, that is whether you're sort of entitled to be here. You're welcome. Yes. Welcome. But I do share the same question Judge Vibey has. Really, what would have played out differently? So I think there are two things, and I've said them. One is that when the parties are in the room, the party engages with the other parties, and the court engages with the parties, I think, differently than when it's merely an amicus. An amicus is a friend of the court. You listen to it. You do the best you can, but you don't really need to pay attention to it. And this court, the district court, only gave us about three paragraphs of analysis in two orders with respect to Rule 24, with respect to the substance of the decree. It proofread the decree. It asked for a table of contents and some commas, but it didn't actually make findings as to the reasonableness. So I think, as a party, we would have had a better chance of having the court actually engage with those questions. But then, to the extent that the district court is simply not going to agree with us, then, as a party, we get to appeal, and the consent decree cannot be implemented, and the mootness problem doesn't occur. So the big focus, then, is, okay, I understand there's a little bit of attitude when you're a party in the room as opposed to an amicus in the room. The big thing is that you get to appeal, and that is where you fail to get the stay. Yes. So this might have made a difference. Well, it's a big thing. Can I just, to clarify Judge Bybee's question, is the big thing that you get to appeal, or is the big thing that the ship sailed in the meantime? Because you did seek a stay, unsuccessfully. Yes, Your Honor. So could you just? But you had to seek a stay as an amicus as opposed to a party. Correct. That we might have had a different attitude towards you? There would be no mootness question, because once we appeal as a party, the court cannot implement the consent decree. So it does have to pause. So instead, as an outsider, that's not really a very polite term, but that's how you felt, clearly. You've communicated that clearly. You sought a stay, but you were unsuccessful. And now your concern is that you're having to argue that the ship has sailed. Exactly, Your Honor. Yes. And so you can see this in other representative settlement contexts, in the class action context, in the pocket context, and there aren't that many government enforcement cases on a representative basis, but this is one where, as a party, if you lose, you get judicial review. You're saying you would not have had to come to us for a stay? The district court would have had to stay the question while you pursued your appeal? I believe so, Your Honor. All right. Now, given that you didn't get status and you sought a stay and we denied the stay, if we thought that you were right in the first instance, that you should have been permitted to intervene, what do we do now? Well, so that's very, very awkward position here. It is, Your Honor, although I think there are three elements of relief that the court has live in front of it now. So if I may just frame the issue, the mootness question is a heavy burden, according to this court in Koala, that the parties need to satisfy that there is absolutely no present controversy and it's impossible to grant any relief. So I'll give you three examples of the relief that this court or, on remand, the district court, probably more appropriately, can award. So the first is most importantly with respect to the injunctive relief. There is a three-year period that the parties are in the middle of implementing, and so that includes 20 pages worth of changes to Activision's practices, including trainings on what is the law. Right now, those trainings are only with respect to federal law, not with respect to California law. That's not merely a question of something additive that we want more. It's something different because if you instruct. Is it something different that you can't get in state court? We could, but the problem is if the trainings are teaching people about federal law only with blinkers on as to state law, it's teaching people the wrong standards. Well, currently. Currently. Hence my question, can you get that in state court and require training number two? Yes, Your Honor. But I think because the Rule 24 analysis is very practical, there is a practical impairment when we have Activision employees and managers and HR being trained and taught, do it this way, do it this way, get used to this form, call this number, use this process, follow this protocol for three years, and then let's say it ends March 2025 and we win injunctive relief. Okay, so your point's taken. If you say you can get it in state court, what are you doing to achieve that? We are in the process of litigating it in L.A. Superior Court. That's your first point. What's your second point? So in addition to trainings, there's a complaint process, there's the opportunity for general input like the police unions had in the Los Angeles case and Forest Conservation Arizona had, et cetera, et cetera. The second point is the data integrity point, and this is a small one. I don't understand this one. How are you harmed on this one? Okay, so there are two elements to this, and the first one we are incorrect, so I'm going to abandon that one. The second one remains, and this is because the EOC and Activision actually fixed the consent decree between Version 1 and Version 3. But the part that remains is that on page 25, the terminations of victims need to be reclassified as voluntary resignations, which is an understandable perspective. They don't want the, quote, unquote, black mark on their file. But in our case, where we are challenging discrimination and harassment and retaliation, if the data show that this person actually wasn't fired retaliatorily, she just resigned, there's no problem here, right? Except, as you know, they're going to get up and say that they're required to retain those records. There isn't anything that indicates they're not going to, and maybe it even makes it easier. They're all gathered into one place. I really don't understand how this makes your burden tougher. Can you explain that to me? So to the extent that it's not... Recovery burden, forgive me. Yes, Your Honor. Okay. To the extent that it's not carefully retained, and there's no specific requirement that it be retained, that erases or obfuscates that evidence. Well, the district court thought that was a speculative concern, so just bear with me on this one. Why is she wrong about that? Why would we think they're going to destroy these documents? So, well, they are required to change the data, so that is a type of destruction. Whether they also preserve the data elsewhere is an open question that is not specifically addressed in the decree. And the very nature of impairment under Rule 24 is always speculative, right? So the court has said that inherently, and I'll try and remember the case, the word may is speculation. So, yes, it's always speculation under Rule 24 that something may happen. In the state court, have you sought an order requiring? I mean, they have obligations, as all officers of the court. Certainly, they're aware of their obligation to make sure their client doesn't destroy evidence. Yes, Your Honor, and we can pursue that separately in the state court. But the mere availability of the ongoing litigation doesn't actually undermine the analysis of the text of Rule 24 and the requirements that the court rule on interest, impairment, and adequacy, which we comfortably satisfy far more than these other cases where environmental groups have an interest in birds and fish and enjoying land, and the court repeatedly, this court repeatedly reverses denial of intervention because those groups, as fuzzy as their interests may be, and as aligned as they may be with a government party that's already arguing in a particular direction, still need to have party status. Here, we actually have a diametrically opposed view, and we can participate in that. So the third one is with respect to the challenge to the state law release. And so we would argue, as interveners, that the state release is illegal and needs to be stricken. Conditioning, that's what you mean. They didn't purport to require, they didn't purport to settle the state claims, right? There's a condition that individuals agree to not pursue that claim in order to participate here, right? If they're accepting the money. If they accept, in order to get any money from the EEOC settlement, the settlement of the EEOC action, which are quotes from the consent decree, the notice, the claim form, the release, repeatedly, 167 times, it says this is an EEOC case, this is the EEOC imprimatur. Yes, in order to accept the money. And then we read the briefing about how there's this policy manual, and this is contrary to the policy manual unless there's independent advice. And you have a response to this independent advice and why you think it was infirm, inadequate. Do you want to speak to that? Certainly. So the first argument is the text of Title VII. The second argument is sort of a bonus of the EEOC manual. The EEOC says, let's not do this. And in the Seattle Grace Harbor case, the EEOC strenuously litigated, we cannot do this. First of all, there is no evidence that every single woman signing a release was represented by counsel. They had the opportunity to be. And in some of the cases that we cited yesterday, the mere opportunity to be represented by counsel, who can't even begin to scratch the surface of the case in one hour, have no access to the evidence, can't effectively advise. Right. So you're not really suggesting there should have been a mandatory requirement that these folks meet with outside counsel if they didn't choose to do so. That's not your argument. I really took from your brief that you're, and you just used the same phrase, scratch the surface. You were more concerned that the court didn't require some showing that these folks were going to have an appreciation for the complex nature of this case before they could really be in a position to give competent advice. Isn't that really the gist of it? Yes. And so what courts have required, and this is in yesterday's filing as well, is a copy of the complaint. So along with the release, there could be a copy of the CRD's complaint. There could be a link to the website. There could be the names and contact information of the CRD lawyers to say, if you want to know more about the rights that someone is in the process of litigating on your behalf as your proxy and in the interest of the state as well, you have access to that information so you can make an informed decision. That's certainly a secondary argument. The primary argument being that it's simply unlawful and it exceeds the EEOC's authority. Counsel, I'd like to take you back to your first point on the injunctive relief. As I understood what you said, I thought it was a little inconsistent with your third point. So you said that there were 20 pages of consent decree regarding training and that there was no training, for example, in things that would have been covered under state law that the EEOC might not have been focused on. Okay. Now, that suggests to me that you're unhappy with not being included in the consent decree, that is, that it didn't wrap up everything. And that feels like a very different claim from the very legalistic claim, again, perfectly understandable, but very legalistic claim that, hey, don't settle, you can't settle our claims here. We have our own claims. They're being pursued in state court. So I got whipsawed just a little bit by whether you wanted to be, whether you're unhappy that you didn't get included in this consent decree or that you just wanted to be totally separate from the consent decree. I see the tension, although it is actually both, because the first critique is that state law claims should not be released. So that sort of speaks to the monetary component and the releases. But then the consent decree does have injunctive relief, and so to the extent that it's also seeking injunctive relief in a separate category of relief, that should not impair CRD's interests in its ongoing litigation and its interests as a proxy for the individual women. So to the extent that the injunctive relief is teaching employees and managers the wrong thing about what is harassment, what is discrimination, how do I report a complaint, how do I move it up the chain, does the Farragher-Ellert defense apply? You're not suggesting that the consent decree is teaching the wrong thing about Title VII. Correct. The wrong thing about people's obligations as a practical matter in the workplace, which is informed by Title VII and by FEHA. And so when you have a court order. Training laypeople who may take away one message, an incomplete message, from the Title VII training, right, and then relying on coming it back, and this is a lesson I deal with. And a message that you can help complete by being successful in the state court action. Yes, although it will be further down the line, and by that point the teachings will have potentially ossified and they will have momentum of their own, and they will be wrong. But that is an interest that CRD has both because of its litigation but also because of its expertise and its position as the proxy for the women. If it has ossified, it may be beneficial that CRD has another teaching experience later on. From a litigation perspective, yes, Your Honor, but we'd rather get it right the first time. And this is, again, why intervention promotes bringing the parties to the table as parties so that they can train. I want to circle back to my question because I think that was very informative to get that perspective. Now I want to know if we agreed with you that the district court should have allowed you either to intervene of right or abused its discretion in denying your permissive intervention, what do we do from here? What can this court do? And what would us coming forward with an opinion that said, gee, district court, you should have allowed CRD to intervene here. Now what? What does the district court do with that? Well, so it starts with here's how Rule 24 works and here's how you got it wrong or you skipped the analysis. All of which is a good intellectual exercise. Yes. Now, in real-world consequences, what does it do to this case? It's remanded to the district court so that the parties, now all three parties, are there sitting together from this moment on. So we may bring a motion to provide the women with an opportunity to make an informed choice about do I want to rescind the release and the contract that was made.  But they could receive notice of here is the information that we should have given you the first time. You have this money in your bank account. You've signed this release. Do you want to undo it? How many people came forward? How many claimants? I believe there are 123 in California. Okay. Although this is... Do we know how many others are still out there? And is that over? Is the time passed for people to come forward?  So we think the universe is 123 in this case. Exactly, Your Honor. And there are likely well over 1,000 or 2,000 in the state case. So this is a chunk of a hole in our case. So they could have an opportunity to rescind the monetary award. We would not want to require anyone to give back money if they don't want to. That would be their choice. But then they could make it in an informed way. We would also, again, with respect to the injunctive relief, just like the police unions, just like the environmental groups, we would be there at the table. And I have done this with the lead lawyer at the EEOC, Ms. Park. We have implemented a consent decree together in another context. And I think this is why I started with the policy of Rule 24 of access to the courts. Because once parties sit down, and I think you see this in the trial court, when the parties have to engage with each other on a discovery issue or on settlement, an antagonistic posture can become more collaborative.  Counsel, had you been permitted to intervene by the district court, had the right to appeal, that would have put the whole consent decree on pause with the possibility of upending the consent decree. It sounds to me like at this point you're conceding that you can't really upend this consent decree, that the better solution, you think, might be to get you at the table to get the training in on the injunction, in which case you are seeking to join the consent decree rather than upend it. Yes, Your Honor. To the extent that the toothpaste is out of the tube, that's where we are. I frankly wondered, after reading all of this, whether you were more concerned about the next time the two agencies need to cooperate. I appreciate you raising that, Your Honor. And that's the oddity of this being a unique, unprecedented situation, but it is very worrisome, I think, from both agencies' perspective. I mean, obviously I'm not going to speak for the EEOC, but on behalf of state agencies, California, Minnesota, New Jersey, everywhere, the prospect of the EEOC releasing state law claims when they are already being litigated by that state agency, that's very problematic. And it's so much better for the district court to say, wait a minute, time out. This is a potential conflict, or it is becoming conflict. Let's get everybody in here, and you guys need to hammer it out, and I will tell you who's right and who's wrong. And I think thinking about other circumstances, so I know with respect to consumer claims by the FTC or antitrust claims by the DOJ, they're very careful not to release those state law claims. But to the extent that both are being litigated, for example, in an MDL, all the parties are there at the table to hammer it out together, and the judge supervises that, and you win or you lose, but at least you know that you have parties standing to fully adjudicate the claims. And there's no way for the district court to insulate itself from review. We've taken you well over your time. I appreciate that. That's all right. We'll ask you to stop there. I will ask you to stop there. We'll put two minutes on the clock. I'm just making a note. When you come back, so for planning purposes. Thank you. You bet. We'll hear from opposing counsel, please. Good morning, Your Honors. Chelsea Sharon from the EEOC. I'd like to begin by just clarifying the current state of the consent decree in this case. So first of all, I'll just point out this is an $18 million settlement. It's the second largest sexual harassment settlement in the agency's history. I know, but one of the arguments, forgive me, right off the bat, but you did mention the size of the settlement. And one of opposing counsel's arguments is we don't know what the real exposure would have been. We don't know if that's 10% or 50%. You read the argument in his brief. What about that? And I can speak to that. We did submit in camera the district court's request, detailed settlement calculations for the district court judge. She reviewed those very carefully, and she made the decision that that was a fair, reasonable, and adequate decree. So I want to be clear that this is not a situation in which EEOC didn't do its homework, as TRD said in one of the briefs, didn't undertake that analysis. We did submit very detailed figures to the district court, and, of course, it was her prerogative to analyze those carefully and to make a decision about whether the decree was valid. Actually, you answered my question, but maybe that's because I didn't articulate it. I don't want the numbers. I didn't mean to imply that. That's fine. But I would like to know whether or not that included an estimate of what you think the total exposure was. That's my understanding, yes, Your Honor. Okay. And I'll point out that in the end, 221 claimants decided to accept relief under the decree. They each had, of course, an individual choice. After the opportunity to consult with counsel whether to accept, 221 decided to accept that relief with an average per-person recovery of approximately $80,000. Of those, roughly 40% were either men or were outside of California, such that they could not fall within TRD's state court class in any event. There are no outstanding award offers. That monetary relief has been distributed to all 221 claimants. The injunctive relief is already- And is that now, have we zeroed out that, the settlement fund? There is $100,000 left, and that's going to the CyPRAE organization reboot representation. None will revert to Activision, as CRD had mentioned at one point in its briefing. That will all go to the CyPRAE. Did they mention that because at one point in the briefing, that was the plan, and the CyPRAE recipient changed, or how did that get morphed? Respectfully, I think they're mischaracterized. In the briefing, there was an option that it could go into a specific diversity, equity, and inclusion fund in certain situations at Activision, but that is not what has occurred. It will all go to reboot representation. I appreciate the clarification. No, of course, of course. But anyway, you were just saying 221, but 40% of those folks aren't eligible to participate in the state- In the state court class because they're either men or they worked for Activision. And that's how we get to the 123. That's correct. Okay. Of those 123, I'll just point out that it's not entirely clear whether all of those could be within the scope of CRD's class for just a few reasons. One is that our class period is larger. It goes back further than CRD's, and we've also sued subsidiary defendants that CRD has not. So I don't know for sure which specific amount of those would fall outside, but it's possible that there's not a complete overlap of those individuals. The injunctive relief is well underway. Activision has hired the EEO coordinator and consultant. The trainings are underway. I'm sorry. Can I ask you about the trainings? Yes. Because I think opposing counsel makes a really good point. In another life, I've had experience with some of these trainings, and it's really tough for lay people to hear, just tell me what to do, right? What are the rules? I'm going to, in good faith, abide by the rules. And to be heard in one training, here's the yardstick, and then two years later or three years later or whatever, you know, hear what the state standard is and have those be two different things. It seems to me that's just bound to make the training less effective. Why shouldn't we be concerned about that? Sure. I appreciate that as a practical matter, Your Honor. I just want to step back for a moment and just point out that we agree that this would be a very different case  in a cooperative effort to... At the outset. At the outset. But that's not what happened, Your Honors. CRD intervened in order to, its words, block, oppose, undo the consent decree. It claimed that we had colluded with Activision, that we had engaged in a reverse auction, that we were mandating destruction of evidence. That's really a political problem, right? That's not a legal problem. The district court doesn't get to say, oh, you're trying to upend this as opposed to trying to join this, and therefore you get intervention under one scenario but you don't get it under the other. Of course. I'm just pointing out, Your Honor, that... Yeah. ...that... You might have taken a different attitude. No, certainly. But I guess my point is... But you took the legal position that they weren't entitled irrespective of their motivation. And I, forgive me, I don't mean to make a motivation point, but if CRD had come in and said the relief we want is to join so that we can cooperate and make sure this settlement is most sufficient at training, that it encompasses important elements of state law, we may well have taken a very different position. I understand the value of that. Now, here we are at the 11th hour, and this is the first time that CRD has ever mentioned wanting to participate in monitoring, wanting to participate in training, wanting to engage in a spirit of cooperation and implementation of the decree. Their back is against the wall, though, because... I understand. ...they're out of this completely, and, you know, that horse is out of the barn. Of course. But I don't think that that's a reason to allow them to raise relief that they've never sought before. It suggests that both sides might have been a little kinder and gentler here. Certainly, and I want to point out that we had engaged in, you know, we have historically engaged in a very good relationship with CRD. As our brief takes length to point out, we undertook a longstanding interagency agreement. We sought to avoid this precise situation by trying to delineate who would investigate and litigate what claims so that we weren't in this situation where there was this unfortunate posturing over who would take what claims and who would settle what claims. So as we point out in our brief, we did very specifically delineate that EEOC would investigate federal harassment and related retaliation claims. I appreciate that, and we've read the briefs, and it's disappointing, and I think at least two of us have made that really clear. But here we are. Can you please speak to the concern that opposing counsel raises about it does seem to me that this is atypical for the EEOC to be requiring as a condition the settlement of the state claims, or at least agreeing to that in the consent decree vis-à-vis Activision's position. So could you speak to that? I disagree that it's atypical, Your Honor. Our policy manual makes clear that we have the discretion to do that as long as the claimant has the opportunity to consult with counsel. But let's talk about that because he makes a really strong point on my scorecard about scratching the surface. This is a complicated case. There's a lot to know. It's really concerning. Or do I misunderstand the extent to which? Is it an hour of time? It's an hour consultation. I can represent, Your Honor, that there were efficiency gains here because many of the counsel did repeat consultations. It was a group of counsel who often saw many different claimants, so they had background knowledge about the case. It wasn't as though one counsel met one claimant, a different counsel met another claimant. There obviously was some efficiency benefit from having multiple claimants with one counsel, and that these counsel were, you know, they are respected plaintiff's attorneys who are very interested in the case. They took the time outside of that hour to review background information and to familiarize themselves. And the idea that it would be CRD who could advise the, should have been notified that they should contact CRD just strikes me as problematic. I don't suggest that. I'm just suggesting this doesn't feel like very much, and it's concerning to me, and I wanted, you know, in good faith to explain that to you. You know, in another life, I've been in a situation kind of close to the one you had here, and I know these things can go off the rails sometimes. It's just it is concerning, that's all. After all, you do have practically the same objective in these agencies. And, you know, and then we're always, by definition, that's what we do for a living is 20-20 hindsight, right? So it's so easy for us to be pontificating about that. But that part of this struck me as concerning. Which part? The fact that there's. One hour. The one hour. One hour. Yes. That's not a lot. I'll point out that, you know, that is a very, as we had said in our brief, that is a very routine provision when we do seek releases of claims as often for one or two hours of consultation. Not reassuring. I think this is a standard provision in settlement agreements that courts routinely approve to have a. . . I know a lot about settlement agreements, too. And I'm just going to tell you, they don't all read that way. And I think you have conceded, and I'm not here to argue with you or make your life miserable, but I think you have conceded that the agreement didn't require counsel to do what you think they did, and maybe they did by way of getting up to speed. So that's concerning. I have the question Judge Bybee has, really, and maybe all three of us have. If we decide that the district court made an error here about intervention, mandatory intervention, then what? I agree with the questions before. I don't think that there is practically anything really that can be done at this stage. It would be remanded to the district court, of course. CRD would be able to participate as intervener. But as opposing counsel mentioned, they would seek to make the same substantive arguments that they've already made. It's unclear what relief could be achieved at this stage, given the advanced implementation of the consent decree. I guess it is possible that they could now join in helping to train employees. That seems to me like the maximum amount of relief that could be obtained at this juncture. I don't understand how. I haven't heard a clear path. And that's not enough? I just don't. I believe they've forfeited that relief. They've never asked for that before. This is the very first time they've ever indicated that they want to participate and implement it. They didn't make that request in the trial court? No. They have never, ever asked to participate in monitoring of injunctive relief, to cooperate with us in implementing the decree, to assist in training. They have always sought to undo the consent decree to block its provisions. And had they asked for that earlier, it's entirely possible that we could have found a way to cooperate in good faith in having them help with implementation of the decree. But this is the very first time that they have raised that point, Your Honor. And I don't understand how that would fit under Rule 24, where it requires an interest to be impeded or impaired. I haven't seen any way in which the implementation of the injunctive relief much of what CRD was interested in is gone. I understand that. It's gone. So whatever hard line it was arguing for at one time, it no longer realistically can ask for that. So this is the theory of the second best. And it does feel a little late, and it does feel a little more conciliatory. And you were saying, well, if they'd been that conciliatory early on, we would have all gone out to McDonald's for milkshakes. But that didn't happen. Correct. And I think that at this stage, just because they're trying to grapple with some small form of relief, I don't think that's a basis on which to grant intervention for something that they failed to explain why they have an interest in how the training is done in a federal consent decree when they could very well achieve the same relief in their state court action. Well, I think he's spoken to it. It would be sequential, and it would be certainly less effective. But could I hear your side, since we're taking everyone over their time today, could I hear your side of the response to the other relief that he mentioned, or the impairment of his right having to do with retaining the documents? Yes. Because the briefing just goes right past each other on this point. Sure. I don't understand why my opposing counsel thinks that this is outside of the record-keeping provisions of the decree. So 1 ER 25 of the decree specifically requires that any document removed from the personnel file be retained. Is it because it's a document, like a paper document, and is there concern that some of this won't be kept on paper and it can be deleted electronically? Possibly. But I think the definition of document would have to encompass an electronic document as well. So I don't see how you reclassify a termination without removing some sort of document related to the termination. So this is why your briefing keeps telling me we have to keep it, we have to keep it. That's correct, Your Honor. And I'll also point out that at 47 to 48 of the decree, it speaks about the record-keeping provisions themselves talk about needing to retain any document related to investigation of retaliation. So it seemed that that could arguably fall within that as well. I think the idea that this information would not be retained with those specific provisions in the decree and dealing with sophisticated counsel who, of course, have an independent obligation to retain records relevant to litigation is quite speculative, and the District Court was really offended by the notion that she would, you know, approve a decree that has as its aim or even as its effect to countenance destruction of evidence. Thank you. We really have taken your time at this point. Sure, I appreciate it. Judge Bivey, anything further? Judge Vitaliano? No. Thank you so much. Thank you. Good morning. Good morning, Your Honors. Ashley Aul for Activision Blizzard, Blizzard Entertainment, Activision Publishing, and King.com. CRD's motion to intervene was correctly denied on the merits, and it was based on objections that Judge Fischer accurately recognized were speculative or misleading in many respects. And now their claims are not redressable. And with respect to redressability, I would urge the Court to look at page 15 of their opening brief, which lists what their actual claims are. Those claims, they said there were three of them. One was related to the claims process, which is to say this is the extrajudicial discovery argument. They said that the process by which individuals would submit claims to the EEOC was providing some kind of extrajudicial discovery. That's not redressable. That process has already happened. Every claimant who wants to participate has already submitted that information, and the EEOC has used it in order to make its assessment of eligibility. That's not redressable. The second is with respect to the individual releases. And as they've rearticulated today, it's their position that those releases were improper. With respect to the form, which is really the state at which the consent decree was when they first raised this, that form is never going to be used again because, again, the claims period is over. So if the court were to rule today that that form shouldn't have said that, it would affect a class of zero people because that form is never going to be used. Then we're left with people who have actually accepted the opportunity to get payment out of this process. And now that's a binding contract. And even counsel today has said that they don't want to unwind those contracts. They don't want to take money out of people's bank accounts. It's not just that it's a binding contract. It's been performed. And it would be perverse to put people in a situation where that was trying to be unwound. I don't think that's what anyone wants, and I don't think it's what this court has any power to do. The only cases that counsel cited in its Rule 28J letter are class action cases specifically under Rule 23D that speak to a court's authority to avoid misleading class members in certain instances. I don't know that the reasoning of those district court cases is correct to begin with. But regardless, Rule 23 does not apply to EEOC enforcement actions under general telephone, a Supreme Court case. And I know it is not CRD's position that class procedures apply to enforcement actions generally. So those cases are just off point. So that leaves its third argument in the brief, which was about the evidence destruction. And here I'll confess I think the merits and redressability get very close together because if the court were to order the consent decree to say you shall not destroy evidence, it would have zero impact on its implementation in the real world. And to go to Judge Kristen's question, these are all digital records. Everything is being preserved. Do you know that in our record? I don't believe it is in the record. I couldn't find it. Judge Fisher found at ER 167 that the provisions do not require any destruction of evidence. I think that's a factual finding this court should defer to. Do they require retention? Yes. They do not require or authorize destruction. I don't think there's any difference under the circumstance. There's also an independent. Of course there is. I think there is no practical difference in terms of what CRD's argument is, which is that it would somehow affect its ability to get these in discovery. There are, of course, also independent obligations under California law to preserve evidence when there's a pending litigation. So I don't think that is redressable. It's also just not true. Those are the only three things that CRD raised in its brief. And if the court looks to the underlying record, I've got the citation here at ER 236 to 253. Those were their objections in the court. Those are the things that they raised. The first time they sought to intervene? This was after their intervention in their objections that they filed. That's what is at ER 236 to 253. Sure, but that's, what, December of 2021? Correct. They have never raised. So the points they raised today, EEOC counsel is correct. They have never raised this training point ever before. Again, this is the theory of the second best. This is not what they wanted when they initially intervened. They wanted something much more aggressive. It is not available to them today. So in some respects, they've taken a more practical approach, which is to say, okay, we're not going to get what we want. We realize the realities of the situation. But what we do want is we now want a seat at the table. We want to be able to get our training in there so that we don't have to bring this second litigation in superior court and come back to Activision with more training that is slightly different from what the EEOC has provided. So what's wrong with that? With respect to redressability, I think on top of it being waived or forfeited, that is just simply never, ever what they wanted when they moved. These are not part of the merits. I understand that, counsel. What's wrong with them arguing it today? Because I think redressability is based on the actual claims raised by a litigant. This is not just in their brief. It's also before the district court. I don't think when assessing redressability, the court hypothesizes other ways in which something could have been. Counsel, I've heard you tell me that it's waived or forfeited. I haven't heard you tell me that it's not possible. I do not think any of the claims that CRD actually pursued are possible. And I believe when assessing redressability, this court should focus on what their actual claims were. And on that basis, I would say that that is why the court should not turn to this raised-for-the-first-time-today argument about their involvement in injunctive relief. So if you focus on the actual claims that they made and the actual things that they told the district court they wanted to accomplish, none of those things is redressable anymore. And on that ground, the court should dismiss. One additional point I would make is that many of the arguments they've made to try to avoid that conclusion also contradict the Simon case. It's in the EEOC's brief at 40. That stands for the proposition that when determining justiceability, you can't assume or requires that the challenged action of the defendant be the basis for redressability. It can't involve some third-party decision. And so to the extent that there's an argument that you could go to people that had participated in this action and you could offer them the opportunity to rescind, I think that would contradict the Simon rule because it's not a direct causal result of what this court would do. So transitioning to the merits, I want to push back on the assumption that anything about this process wasn't fair or that CRD was required to participate in it. So as a general matter, employees in California can settle their employment claims with no process. The CRD does not have legal authority to say whether they can or cannot settle. That's not true in all areas of law. Under PAGA, for instance, plaintiffs can't settle their claims without a relevant state agency weighing in and approving it. That is just not true under FEHA. And so as a result, there was no legal basis, unlike, for instance, the police union in the city of L.A. There was no legal basis that gave CRD a seat at the table here. And instead, we didn't just have employees considering this by themselves. You had a process that was supervised by the federal agency that is charged with protecting employees, that involved abundant notice of what the effect of that settlement would be, not just in the initial claim form but then also in the release form, and also the opportunity to consult with counsel. And as a practical matter, there are people who didn't seek it, there are people who sought it and then did not accept their offers, and there are people who accepted their offers, which I think as a practical matter rebuts any contention that it was somehow overly persuasive for people. And then finally, I want to push back on the CRD's argument that this situation is so unusual. This court's prior decision in Blake is, I think, the best case on point here. And in Blake, the California, I'm going to get his title wrong, but it was a securities case brought in federal court that actually involved California state securities claims alongside federal ones. And the California Commissioner of Corporations, who had authority over California securities laws, sought to intervene in that case, making arguments totally akin to what CRD argued here. And the court held that that was not appropriate, that that commissioner was not entitled to intervene under Rule 24. And it cited a Sixth Circuit case called Brewer that involved employment claims and an employment agency totally identical to CRD in terms of its interests. If the court reaches the merits, I would encourage the court to affirm the district court under Blake. If the court has no further questions, I would submit. I don't think we do. Thank you. Thank you for your argument, counsel. Thank you for the extra time. Could you give me one second? I'm going to finish up.  Okay, I'm ready. Thank you, Your Honor. So the EEOC manual provides that individuals who come in with lawyers and are pursuing their own claims and the EEOC wants to settle the federal claims, the EEOC needs to be sure to stay in its lane with respect to the federal claims. If the person has a lawyer and that person can negotiate for them, say, give me more money, change the release in this way, then under that context individuals will release state claims. Here, as the court has pointed out, the lawyers who are made available to the individual victims are not able to negotiate anything, right? It's a take-it-or-leave-it offer with the dollars and the text of the release. So that's very different from the normal situation where you have an individual who's represented by a lawyer. Was the $18 million enough? We have no idea because the court held secret the analysis. But the court independently assessed that. The court independently reviewed that. And counsels made the representation that the court had the EEOC's best guess of the extent of the exposure. I don't think that the court said that it did that. But regardless, it did not make any findings about the reasonableness of the amount. And that's something that in a representative action the victims, the public, EEOC, CRD have an interest in seeing. But you're really not asking us to undo that at this point? No, Your Honor. Although I did want to add that one of the things that we've been asking for all along is for the district court to do a rigorous analysis that it should as the quasi-fiduciary of the absent individuals. Is this a sufficient amount? Is this worthy of approval? And it didn't do that analysis. So that's actually a separate type of relief. Let's go to the training. So Ms. Hall's argument is you didn't request this before the district court. Is that right? So we have. And she said that you also didn't request it before this court, citing page 15 of the blue brief. We have. So we have not specifically made that precise argument. We have challenged the consent decree as a whole. We have challenged the inadequacy of the injunctive relief. We have challenged the lack of individuals having access to the information that CRD is bringing a case, and here's a little bit about what it's about. And we have challenged the fact that the specific aspects of the injunctive relief are inadequate. This also speaks to the problem that we discussed earlier, that when you've got to bundle it all together as an intervention motion or as an amicus, you may not be able to make all 19 arguments that you want to make, but certainly we have challenged the decree as a whole. We have challenged the injunctive relief, and we have appealed the court's order approving the consent decree. That is an entirety that can be challenged, and whether you want to poke at one aspect or another or this page or the other page or you want to acknowledge the changed reality that has happened over the last year and a half to say, well, some things have happened and so we need to adjust our request for a particular flavor of relief because of the changed circumstances, I think that's just the reality of life moving on. Let me just check and see if we have any additional questions. Could you please wrap up? Thank you, Your Honor. So in conclusion, CRD respectfully requests that the court find that the Rule 24 elements have been met, consistent with its jurisprudence, and remand to the district court to allow CRD to make arguments to ask for concrete factual and legal findings about the reasonableness of the decree, to confirm the details of preserving the data that may or may not be being preserved, and to participate in the spirit of partnership that the agencies have always had in overseeing the implementation of the injunctive relief. Thank you for your time. Thank you all for your careful preparation and argument. It's very, very helpful. We'll take this case under advisement.
judges: BYBEE, CHRISTEN, Vitaliano